The next case up this morning is 412-0825, Moxana Community Union School District et al. v. EPA et al. Show appearance of the appellant, Mr. Craven, and for the appellee, Mr. Schmidt. You'll be arguing the first, and Mr. Wilson, you'll be arguing as well? Yes. Okay. Mr. Craven, you may proceed, sir. Thank you, Your Honor. May it please the Court. Counsel. Counsel. The pleadings in this case lay out the detail of the underlying events, and this matter in some form has been before this Court before. But in summary, this case involves the certification of what are called pollution control facilities at the Wood River Refinery in Southern Illinois. Those certifications involve the taxes of not billions of dollars to the plaintiffs and other local taxing bodies in the county. For many years, an agreement as to tax assessment was in place. As that agreement was set to expire, WRB, the owner of the refinery, set about the process of filing requests for certification for pollution control facilities for many of the improvements to the refinery. That process starts with an application by the owner to the Illinois Environmental Protection Agency. EPA reviews that application and undertakes both a legal and a technical review of the application. That application is then forwarded to the Pollution Control Board. At that point, the matter is docketed by the Pollution Control Board, and the first public notice of the application is noted on the Pollution Control Board website. Within days, the Pollution Control Board may hold what it calls a closed deliberative session to consider the evidence presented at the hearing, which is what it calls the EPA recommendation to it. One week later, at an open meeting, the Pollution Control Board meets again, and admittedly, their minds are already made up, and they issue, without any further deliberation, 20 page or so orders involving the applications, effectively removing millions of dollars from the local property tax rules. This complaint alleges a violation of the Open Meetings Act and the EPA Act by the Pollution Control Board and a violation of FOIA by the EPA. The trial court additionally entered a preliminary injunction, and that order was affirmed as modified by this court on August 10, 2012. While that appeal was pending, the parties filed summary judgment motions with the trial court, and on July 27, the trial court issued a docket entry, which it later admitted was not its best work, in the words of Judge Schmidt. On a motion to reconsider, the court essentially backed away from that docket entry. At that point, Assistant Attorney Generals Corrigan and Mr. Wilson for WRB wisely offered to draft a new order for the court, and the court accepted that offer. However, the court did agree at our insistence to make a record of its findings of fact on which the order drafted by counsel would be based. That docket entry on August 13th contains two and only two findings of fact. EPA and finding number one, the Environmental Protection Agency and the Pollution Control Board complied with FOIA. This on a record in which there was no FOIA claim involving the Pollution Control Board. Finding number two, Pollution Control Board did not violate the Open Meetings Act. An order, clearly beyond the scope of these trial court findings, was presented and entered on August 22nd, and this appeal followed. On the merits, on the FOIA case, FOIA requests were submitted to the Environmental Protection Agency, and EPA failed to respond to those complaints within the five days required by the statute. This is not controverted. It's admitted in the answer. The trial court on that record found that the agency complied with the act. The agency did not meet the five-day requirement, did not produce documents when this complaint was first filed, did not produce documents before the first hearing before the trial court in this matter. The answer by the Attorney General essentially admits failure to comply by the agency. Nevertheless, the trial court found compliance with the act. Why? The order, as drafted by the trial, as signed by the trial court, first finds that the matter is moot, because at some point the agency did produce many of the documents. How a finding of moot is defined from the trial court's finding that EPA complied with the act is not explained in the order. Since the amendments to the FOIA in 2010, sponsored by the Attorney General, even late compliance with the request leaves open the issue both of attorney's fees and civil penalties under the act. For that proposition, Rock River Times from the Second District stands. Even the 1999 case cited by the order reflects that the attorney's fees claim is not moot upon late compliance with the act by production of the record. The order drafted by counsel and signed by the trial court also says essentially we have the wrong plaintiff. Again, the trial court made no such finding. In order to find that the Environmental Protection Agency complied with the act. For a counsel, two questions. One, you're talking to a panel of former trial judges. Yes. We've had lots of stuff slipped in front of us to say. When you're the trial judge, you say I want this to reflect, prepare written order. Standard language. Written order is prepared. The other side typically will say, yeah, that's pretty much what you said, judge. Or, as I suspect you did say, no, that's not right. That's not what you said. You keep on talking about this as though we're dealing with two separate entities. What the trial judge said and the written order. When the trial judge signs the order, it's his order. Yes. So why do you keep drawing that distinction? And it may be an order without basis, but it's not as if they can be pulling a fast one on the trial judge when they submit the order to him to review and sign. Because if he doesn't think it's what he wanted to say, he doesn't have to sign it. That's correct. And you are right, as the record reflects, we noted our objection both to his first documentary and to the order as presented. And he signed it. It's his order. The point that I intend to make is that he also made, he, the trial court, made two, and our insistence, made two specific findings of fact on which that order was to be based. And I'll leave the point alone. Because the second question I want to make is, does any of that matter at this point to us? I mean, we have the order signed and we're dealing with that. Well, we have the order signed. The findings made by Judge Schmitt in the documentary are different than the findings in the order. In the findings in the order, the finding of mootness and the finding that there's a wrong plaintiff are also in error. It's not moot, as I just pointed out. And we have the proper plaintiff in this case. I raise the issue of, perhaps out of personal frustration, with Well, I can understand that, but it's not helpful. Okay. We have his order and that's the order we're going to address. Noted. I'll sign it. As to the point that we have the wrong plaintiff in this case, EPA admits, in paragraph 35 of its answer, that counsel for plaintiffs submitted this FOIA request. Public bodies, in sum, public bodies don't have opposable thumbs. Public bodies have to act through human agents. School districts can't submit FOIA requests. CBS can't submit FOIA requests. Gatehouse newspapers can't submit FOIA requests. You mean at some point there's a real person? At some point, someplace in all of those institutions, there is a real person that signs FOIA requests. We've cited many cases in the brief, including the CBS case, where FOIA cases are brought by non-humans, public bodies or corporations, when a human agent filed a request for the corporate requestor. And again, clearly, the EPA did not come close to complying with the Act. The Attorney General's Public Access Counselor, which now has some administrative oversight of the Act for public bodies and members of the public, has issued no less than five opinions that when the General Assembly, in the Freedom of Information Act, said respond within five days, they met, respond within five days, and failure to respond within five days is a violation of the Act. But wasn't there a footnote explaining that that didn't apply to agents for whom the AG was the attorney? No, I missed that. Okay. I'll go back and look again, but I've missed it so far. There is no explanation offered to support the finding that EPA complied with the Act. As to the Open Meetings Act and the Environmental Protection Act, Section 5 of the Environmental Protection Act, which is the act that formed the board, requires that all meetings shall be open to the public. The trial court apparently adopts the defendant's suggestion that the General Assembly, again, did not mean what it said. There are no statutory exceptions to the requirement in the Open Meetings Act that all meetings of the board be open. The trial court imports, without explanation or statutory support, the exemptions in the Open Meetings Act into the Environmental Protection Act. If the General Assembly wanted the Open Meetings Act exceptions of openness to be parallel to the requirements of the Environmental Protection Act, they know how to do that and did not. As to the Open Meetings Act, on March 17, 2011, the board approved a 2012 meeting calendar. At that meeting, the board, as required by Section 2.02 of the Open Meetings Act, set its schedule of meetings for calendar year 2012. No problem with any of that. However, 2.02 does not govern how or when a public body goes into closed session. That issue is governed by Section 2.0a of the Act. The requirements to go into closed session aren't that onerous. At a meeting open to the public, there must be a motion to go into closed session citing a specific exemption allowing closed session, approved by a majority of a quorum, presented by a by-call vote. Section 2.0a specifically provides that a single vote may be taken with respect to a series of meetings, provided each meeting in such series involves the same particular matters and is scheduled to be held within no more than three months of the vote. The board admits that the March 17, 2011, motions, which adopted their calendar, did not recite any exemption. They claim inadvertence. Like the footnote that's missing about five days doesn't mean five days, I looked again just this morning and I find no inadvertence exception to the Open Meetings Act. Second violation. Section 2.0a specifically limits a single vote with respect to a series of meetings scheduled to be held within no more than three months of the vote. March 17, 2011, plus three months, gets us to June 17, 2011. Five and a half months from the beginning of 2012, when this calendar starts off, and 18 months from the end of the last of the meetings to be closed. The Act also requires that the subject matter of the closed meetings must be limited to the same particular matters. How does the Pollution Control Board know in March of 2011 that they are going to consider the same particular matters in each of 26 or so closed meetings throughout the year of 2012? It's preposterous. Even if we get past those procedural defects, the Board claims somehow that everybody knew that they were talking about Exemption C-4, the exemption which allows a body to go into closed session to consider evidence or testimony at a hearing. C-4 on its face doesn't apply. There was no hearing. There was no evidence. This is a paper process. The EPA submits pieces of paper to the Pollution Control Board. The Pollution Control Board goes into closed session, and a week later comes out admittedly with their minds made up and rubber stamps a 20-page order. The Board takes the position that the filings from the EPA started a paper hearing, which allows the Board to go into closed session. Paper hearing is heretofore undefined in Illinois law. We are dealing with the Open Meetings Act. Exceptions to openness are to be narrowly construed, and we're now going to create a new creature called a paper hearing. Where did Judge Schmidt go wrong in this case? Somewhere between his initial injunction and the end of July. He went wrong in this case by finding that how you find that there's not a violation of the Open Meetings Act on this record, Your Honor, is frankly beyond me. I do not understand that. How you find that the Environmental Protection Act complied with the Freedom of Information Act is frankly beyond me. I don't know. Two other questions. One, is this Roxanna case that's now pending before the Supreme Court have any effect whatsoever on what happens here? No. The second question is, if we agree with you, what do we do? What would you like us to do here? As to the Freedom of Information Act, it simply remanded this matter? Assume it's our usual posture. Craven's right across the board. What do we then do? Well, I could give the Court a few citations, but that hasn't been the case. Well, it's okay. We're making up for our previous sins. We now have understood that right across the board. This matter should be remanded to Judge Schmidt for determination of attorney's fees and civil penalties against the Environmental Protection Act. That's what you'll be seeking? Yes, for its violation of the Freedom of Information Act. And as to the Open Meetings and EPA Act violations by the Pollution Control Board, we would ask two things. Judge Schmidt entered an injunction against the Pollution Control Board doing anything with the refinery. This Court broadened that injunction and remanded it to Judge Schmidt. Judge Schmidt vacated that injunction during the course of these orders. We would ask that that injunction be put in place. Reinstated? Yes. Is that before us now? It's entire cases before you now. Well, is that particular relief and request before us? I don't know if that request is in the briefs, but the request that is in the briefs is that this Court employ, in this case, the remedy that it employed in Rice v. Adams County, which is to set aside the actions taken in an open session, but in which the Court found violations of the Act, set aside the determinations of the Pollution Control Board as to all matters involving this, in these meetings involving the refinery, and remanded the entire thing to Judge Schmidt with instructions to send it all back to the Pollution Control Board to do this in compliance with the Open Meetings Act. Would that have, if we were to do something like that, would that necessitate addressing any question about the action by Judge Schmidt in vacating the prior injunction? Or is that something which we throw the ball back in his Court, or what about it? It may be you throw it back in his Court with instructions. The usual instruction of the appellate court to do the right thing. That he was right the first time, and that there were violations of the Act, that there are violations of the Act, and the actions of the Pollution Control Board and the Environmental Protection Agency should be examined in light of the clear language of the statute. Thank you, Counselor. You just took my last three pages. Thank you very much. Okay, Mr. Schmidt. Thank you, Your Honor. May it please the Court and Counsel. Counsel. I'll be dividing time with Mr. Wilson and taking the brief. Mr. Wilson will be taking three minutes of your time? That's correct, Your Honor. In terms of the Freedom of Information Act issue, we do have a forfeiture argument in our brief because the opening brief of the appellant really doesn't address the August 22nd order that is really the dispositive order in this case, the order that's before the Court. All that's really said on the FOIA issue in that brief is that the EPA violated FOIA, and that really wasn't the basis of Judge Schmidt's ruling with respect to FOIA in the August 22nd order. Judge Schmidt found that the request for injunctive relief to produce the records was moot because the records had been produced at that time, and he also found that the plaintiffs were not a proper party to receive attorney's fees, in essence because they were not the ones who had submitted the FOIA request. Those issues were never really addressed in the opening brief, and we believe that that should result in a forfeiture here with respect to the FOIA issues. I do want to acknowledge that the EPA was in violation of FOIA for not complying with the deadline. How did the judge conclude otherwise, given your acknowledgement? I'm not sure how he could have concluded otherwise, Your Honor, and I believe he corrected that in the August 22nd order, but that was wrong. That was wrong. Mr. Craven is correct that with regard to both the EPA and the Open Meetings Act, they're both supposed to be interpreted liberally to achieve the goal of openness, are they not? Yes, they are. That's correct, FOIA and the Open Meetings Act. So the missing footnotes that we can't find, I guess, are not supposed to be run into the Act by anyone, are they? Well, I think I'll address the FOIA matter first. I think it's a little more than missing footnotes. I think the Act does only allow the party that made the FOIA request to seek relief under the Act, and Mr. Craven referred to media outlets that have to make FOIA requests through human beings. Of course that's true, but I've seen a number of those FOIA requests. I worked for a brief period of time in the Public Access Counselor Bureau, and the media outlets make it very clear who the FOIA request is being made on behalf of. That wasn't done here. Why should that matter? Why should it matter to us, consistent with the argument of the liberal interpretation we should apply here? Well, I think... How does the state agency somehow adversely affect it if there's some question whether this is a person or an entity? What does this mean to you? Well, I think it makes a difference in terms of trying to enforce these Acts. I'll give an example. There are a number of organizations, as Mr. Craven said, that will submit FOIA requests, and the language that confers standing indicates that standing exists. I think the language is on behalf of. If the Sierra Club makes a FOIA request to the PCB, does that open up every one of its members to sue the PCB or to sue the EPA? I think there do have to be some reasonable limits on that, and I think the statutory provision, Section 11, which authorizes lawsuits, does impose some reasonable limits. I don't think it's a severe burden to require a FOIA requester in this situation to make it clear this is being made on behalf of these entities. What's the prejudice in this case to the agency? Some uncertainty about who the requester is? I can't say that there's prejudice to the agency in this case, Your Honor, because, as Your Honor is aware, the agency is supposed to comply regardless of who the requester is. But I don't think FOIA was intended, the provisions that authorize lawsuits, were intended to be that open-ended where they're enforceable by just about anybody who might benefit from the requester getting the documents. And OMA is in contrast. OMA, the provision that authorizes lawsuits, pretty much authorizes anybody to bring a lawsuit. So I would point out that contrast, too. FOIA is different. FOIA limits, we believe, limits relief to the requester. But I would also point out our other argument in this context is that under the case law, attorney's fees should be awarded only if the lawsuit was a catalyst for the recovery of documents, if the lawsuit caused the recovery of documents. We know with regard to their first FOIA request that it didn't because they had received those documents. Is any of this an issue for us now? That is, if we agree with Mr. Craven, just reverse everything and send it back to the trial court, it's at that forum that he will make his request for further relief, and Judge Schmidt will be addressing these concerns and exercising his judgment in the first instance only. Well, I think if the court agrees with Mr. Craven, yes, that is the appropriate thing to do. We're not going to be, there's no need for us to be expressing any opinion with regard to any sort of specific relief Mr. Craven will be requesting on remand, is there? No, I think that's correct, Your Honor. But I would say that, I would also reiterate that by not including anything in his brief challenging the basis of the 822 order, and that includes the attorney's fees because the August 22nd order did deny attorney's fees, and there was nothing in their opening brief even addressing the attorney fee issue. So you're surprised by all of this? I can't say that I am, Your Honor, and Your Honor realizes we tried to address it in the brief, so I can't honestly say that, Your Honor, but we would still suggest that that constitutes a forfeiture and ask the court to deny relief on that basis as well. In terms of the Open Meetings Act, I'll start off with the Environmental Protection Act provision, Section 5, and I wanted to talk a little bit historically about the Open Meetings Act. At the time this EPA provision was put into effect, which would be 1970, which was when the Environmental Protection Act was passed, the Open Meetings Act was not nearly as broad as it is today. The Open Meetings Act at that time said that only official meetings of a public body had to be open to the public, and that was in Chapter 102, Section 41 of the Illinois Revised Statutes for that time period. So, again, the Open Meetings Act only applied to official meetings. It would appear that this language of the Environmental Protection Act saying all meetings must be open, it looks like that was intended to address that situation, because public bodies at the time would sometimes simply say, meet and say, this wasn't an official meeting, not covered. So, at the time, that provision would have had significant meaning. We don't believe that it was intended to obliterate the Open Meetings Act exceptions that would allow closed meetings in some circumstances. We don't believe it was intended to deny the Pollution Control Board the ability to avail itself of those. The particular one that it relies upon is now in Section 2C4 of the Act for deliberations. That one was originally available only to two public bodies. I believe it was a Pardon and Parole Commission, the Illinois Pardon and Parole Commission, plus the Commerce Commission. It wasn't even available to the Pollution Control Board until it was broadened in 1995 through the passage of Public Act 88-621, which extended it to all public bodies. So, we believe that the fact that that provision was made applicable to all public bodies has, in 1995, after the 1970 passage of the Environmental Protection Act, is significant. There is a rule of statutory construction where there are conflicting statutes that the one-pass ladder should apply. And we also believe that Section 5 of the EPA, it makes sense to read it together with the Open Meetings Act. Well, counsel, when you talk about this legislative issue, here's something I don't understand. The Open Meetings Act was amended to both provide greater specificity and to arguably broaden it, was it not? It was, Your Honor, yes. Well, at the same time, as Mr. Craven pointed out, if the legislature intended to have the same effect with regard to the EPA, they could have and should have made the same changes that they made with regard to the Open Meetings Act. They could have done that, Your Honor. So, you're suggesting that they really intended to do this, and we should view these exceptions in the same fashion, even though there's no legislative trail to demonstrate that. Well, I think, again, it is somewhat persuasive that, as I mentioned at the time that the EPA was adopted, there was a problem with the Open Meetings Act in terms of this official meeting requirement before the act was triggered. And it does seem, it seems like a logical reading that it would be intended to address that situation and not to allow the PCV to take advantage of that problem. But there is, the language of the Open Meetings Act is broad and, or the language of the Open Meeting, the Open Meetings Act does broadly apply to all public bodies. And I think to the extent there are some inconsistencies, the acts, courts should try to harmonize the two acts and try to read them together. And I think it is a sensible reading that would allow the Pollution Control Board to still take, to still be able to avail itself of closed meeting exceptions. And I think it would be somewhat of an absurd result if the board, for example, couldn't discuss personnel matters in the closed meetings and some other matters that public bodies are traditionally able to discuss in closed meeting sessions. I don't see an expression of legislative intent to deny the board to do that. As Your Honor mentioned, the Open Meetings Act was made broader, but at the same time, it's interesting at the same time, some of the exemptions for it were also broadened. Well, greater specificity and clarity might be a way of looking at it. I think so. I think Your Honor's right. I think Your Honor's right that that was certainly the intent. The Pollution Control Board is not a stranger across the street in the halls of the legislature. Asked for consideration of its own entity, and here's this act. They've got all these lawyers running around and advisors and all the rest of it. Well, certainly any public body is able to go to the legislature. In this situation, they honestly have not felt the need to do that. If this court decides the other way, then certainly they may end up doing that, Your Honor. Is this for me? Yes, two minutes to go. Thank you, Your Honor. I don't have much time to really discuss in detail the applicability of these particular exemptions, so I'll rely more on the discussion in our brief. We think I'll just quickly say with regard to Section 264, the deliberative exemption, this court has recognized as the additional authority. We cite it indicates that a paper hearing really does constitute a hearing, and that the word hearing does really encompass any setting in which a party that's affected presents arguments to an agency decision-maker, and that would include the process that existed here, even though there was no oral hearing. And I'll just wrap up quickly by saying that we ask for affirmance of Judge Schmidt's August 22nd order and thank the court for its careful consideration of the issues. Thank you, counsel. Mr. Wilson. Thank you. Good morning. May it please the court. Counsel.  I ask for three minutes to make one point, Your Honor, and that is that WRB as a private party is interested only in a very narrow point of the dispute that's largely between the plaintiffs and the State of Illinois in this case, and that is that in the complaint, the plaintiffs have asked for certain relief which affects my client. That's why we're a party. Asked for which relief? In the FOIA account, Your Honor, they've asked for an injunction against consideration of any further applications submitted on behalf of WRB, and in the open meetings account, they've asked for an order voiding or invalidating the certificates that were granted in admittedly open meetings. They were on the agenda. There was a vote in the open meeting. They were approved. Judge Schmidt, in his August 22nd order, on our motion to strike, specifically found that neither FOIA nor the Open Meetings Act authorizes those specific relief. The plaintiffs never appeal that. They don't identify it anywhere in their brief, taking issue with that motion to strike. In fact, on two occasions in their brief, they specifically say that there are no issues raised on the pleadings. When we raised the waiver argument in our brief, the plaintiffs in their reply say, well, we didn't argue it because Judge Schmidt didn't decide it. Well, of course he did. It's on page 920 of the record in his August 22nd order. So our view is that issue as to those points of relief have been waived, and I'll stand on my brief as to the remaining. Forfeited is the term of our counsel. Forfeited. Waiver is an intentional relinquishment of a known right. So it's been forfeited, is your claim? It has, under the Katras case and Rule 341, Your Honor. Okay. Thank you. Thank you, counsel. Mr. Craven? Thank you, Your Honor. What about Mr. Wilson's claim? Is that what we talked about at the end of your argument, the same kind of issue? Yes. I mean, this record is clear that the Rice case is throughout the pleadings and briefs in this case. What does the Rice case mean? Does the court have the authority to set aside an action taken in an open meeting? In this court, in the Rice case, set aside an action taken in an open meeting because of a violation of the agenda requirement. The matter was not clearly stated on the agenda. This court held that the failure to put it on the agenda deprived any member of the public who was interested of the right to attend that meeting and take issue with the action of the Adams County Board and set aside action taken in an open meeting. That's clearly at the heart of this case and was raised before the trial court, raised before this court. Is that something we need to rule on now? That is, if we agree with you adopting the usual Craven is right position I mentioned earlier and we just send it back to the trial judge, do we have to even address any of that? Well, the issue would be, and the reason I raised reinstituting, restating the injunction as previously affirmed and modified by this court, there are still matters pending before the Pollution Control Board relating to this refinery. They've been sitting there, so far as I know, dormant during the pendency of these matters. I'm not handling those, Mr. Witt is handling those, but I don't think anything has happened. But there are other matters pending before the Pollution Control Board relating to this refinery on the request for certification of pollution control facilities. We would obviously like none of those to move forward until it is clear that the agencies involved are going to comply with these access sanctions. So, is it necessary for this court to do something today? I can't say that there's anything imminent because, frankly, the Pollution Control Board has withheld from any activity on those funds. With regard to the Environmental Protection Act, the Attorney General's Office makes the argument that the Open Meetings Act only applied to official meetings. But it's rather clear on this record that both the closed deliberative sessions and the open meetings held by the Pollution Control Board are official meetings. At the open meetings, they're taking action, they're approving things, and at the closed deliberative sessions, they're apparently discussing those matters and determining how to act. We don't think it was intended to deny the use of the Open Meetings Act exemptions. It makes sense to read it in that fashion. But there's no authority for the proposition that the General Assembly meant when it said, when it said, all meetings shall be open. As to Exemption C-4, the argument is that that's a hearing, that what happened before the Pollution Control Board is a hearing. The Pollution Control Board wants to have a hearing. They know how to have a hearing. First thing they do is they publish public notice in the newspaper in the county in which the real estate is located. They appoint a hearing officer. They have a hearing. They swear witnesses. They introduce exemptions. They know how to have a hearing. This wasn't a hearing. This was a paper process in which they simply, and I was chastised by Judge Schmidt for using the term, but they rubber-stamped the actions of the Environmental Protection Agency. Does it pass the duck test? No. Neither quacks nor walks like a duck? No. And there are instances in which, and we've all done it, that they cut and pasted the wrong information, made reference to different facilities. In an order about the hydro-treater, they talked about the S-Zorb, and they talked about wrong amounts of money and various and separate mistakes. This wasn't a hearing. We ask that this court fashion a remedy to require these bodies to comply with the act. Thank you, Counsel. Thank you, Mr. Chairman. Recess. And your advisement will be recessed for a few moments.